# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>     v.<br><br>ALEXANDER FLORENCIO MAYORQUIN,<br><br>                              Defendant. | Case No. 18-cr-1732-BAS-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br>**(ECF Nos. 33, 39)** |

On October 23, 2018, the Court sentenced Mr. Mayorquin to 96 months in custody, of which he has served approximately 33 months. (ECF No. 31.) Mr. Mayorquin moved to reduce his sentence to time served because of the COVID-19 pandemic. (ECF No. 33 ("Motion").) Although Mr. Mayorquin made no reference in his motion to any medical conditions or reasons why his circumstances are extraordinary and compelling, the Court appointed counsel to explore the issues further. (ECF No. 34.) Counsel now files a Supplemental Motion to Reduce Sentence, arguing that Mr. Mayorquin's "obesity" compels the relief he is seeking. (ECF No. 39 ("Supplemental Motion").) The Government opposes. (ECF No. 43 ("Government's Response").) For the reasons stated below, the Court **DENIES** Mr. Mayorquin's request.

## I. BACKGROUND

On March 9, 2018, Mr. Mayorquin drove through the Port of Entry from Mexico to the United States in a car with a floor compartment containing 25.82 kilograms of methamphetamine. (ECF No. 22 ("PSR") ¶¶ 2–6.) Post-arrest, Mr. Mayorquin said he committed the offense because he needed the money. (*Id.*)

In fact, this is the second time Mr. Mayorquin has been convicted of a felony drug offense. In 2008, he was convicted of conspiracy to distribute methamphetamine and heroin for which he was sentenced to 75 months in custody. (PSR ¶ 23.) During his prior incarceration, Mr. Mayorquin successfully completed the RDAP program to help him deal with his alcoholism. (PSR ¶ 41.) However, he began using cocaine and methamphetamine after his supervision ended in December 2017. (PSR ¶ 69.) While in custody this time, he has completed many courses including "Jump Rope for Heart Wellness" and "Soccer Fundamentals and Techniques," which certainly help with his physical health. (ECF No. 33.) However, because of the COVID-19 restrictions, he has not been able to enroll in or complete RDAP this time around. (*Id.*)

At the time his PSR was prepared, Mr. Mayorquin weighed 165 pounds and registered a height of 5'7"—which would give him a BMI of approximately 25.8. (PSR.) His counsel now claims that he reweighed himself in the facility "work" room and now weighs 204 pounds, which would give him a BMI of 31.95. (Supplemental Motion.) Counsel was unable to provide any evidence to support this claim of a 40 pound weight gain, other than her telephonic interview with Mr. Mayorquin.

Counsel for Mr. Mayorquin claims he submitted a request to the Warden at FCI Petersburg Low where he is being housed in April 21, 2020, and then sent a second request on August 19, 2020. (Supplemental Motion.) However, the only proof provided by counsel is the Warden's denial of the request on September 8, 2020. (Supplemental Motion, Exh. B.) Mr. Mayorquin apparently did not appeal this denial.

According to the Bureau of Prisons ("BOP"), FCI Petersburg Low has largely gotten any past epidemic of the coronavirus under control. *See* BOP, Covid-19 Cases,

http://www.bop.gov/coronavirus (last visited December 17, 2020).  Although 137 inmates and 24 staff had tested positive earlier in the year, currently no inmates and only one staff member are positive for the virus.  *Id.*  The Government provides information about the BOP efforts to contain the disease.  (Government's Response.)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010).  A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*  In other words, Mr. Mayorquin must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

Section 3582 provides two alternative routes to exhaustion.  In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to fully exhaust his or her administrative remedies by appealing this refusal from the Warden.  In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Mr. Mayorquin only provides proof that the Warden denied any request for compassionate release.  (Supplemental Motion, Exh. B.)  He provides no proof that he appealed this denial.  However, the Government may waive the exhaustion request and address the issue on substantive grounds.  *See United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 532 (S.D.N.Y. 2020).  The Court finds the Government has waived the requirement in this case and thus proceeds to the merits.

### B. Extraordinary and Compelling Circumstances

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. §3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Counsel for Mr. Mayorquin argues that extraordinary and compelling reasons exist for his release because of the coronavirus pandemic and Mr. Mayorquin's obesity. (Supplemental Motion.) It is now axiomatic that COVID-19 is a serious illness, both contagious and causing death to a certain group of people. Those in custody, by virtue of their close proximity, are at greater risk of contagion. Yet that cannot mean that all individuals in custody, regardless of their exposure, risk or criminal background, should be released under the "extraordinary and compelling" reasons section of the compassionate release provisions. *See United States v. Eberhart*, 448 F. Supp. 3d 1086, 1988 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release."); *see also Riley v. United States*, Nos. C19-1522 JLR, CR 14-011 JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020) (same). Instead, the assessment requires a careful consideration of a defendant's background, risk to the community upon release, risk of exposure, and risk of death if the virus is contracted. As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

Mr. Mayorquin argues that he is "obese," which is defined by the Centers for Disease Control and Prevention ("CDC") as having a BMI over 30. *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). However, the only proof of this

obesity provided by Mr. Mayorquin is a statement from his counsel that she interviewed Mr. Mayorquin and he weighed himself in the "work" room, and he now weighs 204 pounds. (Supplemental Motion.) Back in 2018, at the time he was sentenced, he weighed 165 pounds. (PSR.) While it is certainly possible that Mr. Mayorquin has gained 40 pounds while in custody, this requires more proof than that submitted by counsel, particularly when that is the sole ground relied upon for the Motion for Compassionate Release.

Nonetheless, the CDC does indicate that weight can be a key factor in determining how severe a case of COVID-19 may be. Although the CDC reports that "COVID-19 is a new disease" and that "currently there are limited data and information about the impact of many underlying medical conditions and whether they increase the risk for severe illness from COVID-19," "[b]ased on what we know at this time," people with a BMI of over 30 "are at increased risk of severe illness from the virus that causes COVID-19. CDC, *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). And those with a BMI between 25 and 30 "might" be at such an increased risk. *Id.* So the Court is prepared to find that Mr. Mayorquin is at least at some risk because of his weight.

However, the sad reality is that about half the U.S. population is obese. *See United States v. Aguilar*, No. 18-cr-00275-LHK, 2020 WL 6081779, at *5 (N.D. Cal. Oct. 5, 2020) ("As of 2017-2018, 42.4% of American adults are obese.") (citing Craig M Hales et al., *Prevalence of Obesity and Severe Obesity Among Adults, United States, 2017-2018*, CDC (Feb. 2020), https://www.cdc.gov/nchs/products/databriefs/db360.htm). Even more starkly, "[i]n 2015, the Bureau of Justice Statistics reported that in 2011-2012, 74% of prisoners and 62% of jail inmates were overweight, obese or morbidly obese." *Id.* (citing U.S. Dept. of Justice, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12* (Oct. 4, 2016), https://www.bjs.ogv/content/pub/pdf/mpsfpji112.pdf). Assuming this is still the case in 2020, if being overweight qualified as an extraordinary and

compelling reason for a sentence reduction, the vast majority of prisoners would currently be eligible for release.

Mr. Mayorquin has already had the coronavirus once, and, although again not completely dispositive, his weight does not appear to have affected his reaction at least on the first go-around. Thus, the Court finds it unlikely that Mr. Mayorquin has met his burden of showing that "extraordinary and compelling" reasons exist for his request for release. However, as discussed below, the Section 3553(a) factors also compel the Court to deny the motion.

### C.  Section 3553(a) Factors

Mr. Mayorquin had a very large amount of methamphetamine in his car at the time of his arrest. Given Mr. Mayorquin's previous conviction, it appears that a 75-month sentence was insufficient to deter Mr. Mayorquin from getting involved once again in drug trafficking. Although he completed drug treatment while he was in custody the first time around, he still admits a drug abuse problem, which has remained unaddressed this time around. In order to protect the public and to prevent unwarranted disparities with others similarly situated, the Court finds reducing Mr. Mayorquin's sentence to what amounts to 33 months would not be appropriate. Considering all the factors under Section 3553(a), the Court finds that the 96-month sentence is not greater than necessary.

## III.  CONCLUSION

Because Mr. Mayorquin has failed to meet his burden of showing extraordinary and compelling reasons for his request for release and because the Section 3553(a) factors do not support releasing him, Mr. Mayorquin's Motion for Compassionate Release is **DENIED**. (ECF Nos. 33, 39.)

  IT IS SO ORDERED.

**DATED: December 17, 2020**

Hon. Cynthia Bashant
United States District Judge